PROVIDENCIA IRIZARRY, ETC., Plaintiff, Appellee-Appellant, v. THE PEOPLE OF PUERTO RICO, ETC., Defendant, Appellant-Appellee.

No. 10825. Argued November 27, 1953.—Decided January 18, 1954.

*José Trías Monge, Attorney General,* and *A. Torres Braschi, Assistant Attorney General,* for appellant-appellee. *Luisa María Capó* and *Yamil Galib Frangie* for appellee-appellant.

PER CURIAM: Providencia Irizarry, in behalf and in representation of her minor son, Ellis Hernán Irizarry, and as mother with *patria potestas* over him, filed an action for damages against the People of Puerto Rico. Defendant filed a motion to dismiss for insufficiency which was denied, and after the case was tried the trial court made the following findings of fact:.

"1.—The minor plaintiff, Ellis Hernán Irizarry, fatherless, is under the *patria potestas* of his mother, Providencia Irizarry, in whose company he lives at barrio 'Candelaria' of Lajas, Puerto Rico. At the time of the accident which gave rise to this action, the minor was eight years old and in the second grade.

"2.—On December 27, 1948, at about nine o'clock in the morning, the minor plaintiff was walking along the public road of the afore-cited barrio 'Candelaria' of the Municipality of Lajas in search of some 'grass' for his 'guinea pig.' At the edge of the road he found a cardboard cartridge about 4 ½ inches long which he took immediately to his house nearby and once in the back yard he removed the cardboard and uncovered a copper-like tube 1¼ inches long and as thick as his small finger with a 'little wire' attached to one of its ends, which he put on a stone and struck with a machete. In so doing the small artifact exploded in the minor's face leaving him unconscious and causing him injuries which were treated at Lajas' hospital and later at the Municipal Hospital of Mayagüez. The evidence

shows that the discovery of the cap by the minor plaintiff and the explosion thereof were continuous acts without the knowledge or interference of the mother or of any other person. The mother became aware of the accident after the explosion. There is nothing in the evidence tending to show that the minor plaintiff knew the dangerous nature of the artifact which he found. According to his own uncontroverted testimony, he had never before seen one like it.

"3.—As a result and consequence of the accident the minor plaintiff has lost totally and permanently the vision of his left eye. According to Dr. C. W. Dunscombe, the specialist who attended the minor, there was need to remove from the injured eye multiple foreign bodies and to close a perforation in the center of the cornea. In the opinion of the doctor, the left eye must later be removed since even without sight it is very susceptible to irritation. There is in any case the danger of 'sympathetic ophtalmia' of his right eye.

"4.—At the time of the aforesaid accident, the defendant, the People of Puerto Rico, was carrying out the extension of the aforesaid road of the barrio 'Candelaria,' of the Municipality of Lajas under the administration and control of its Department of the Interior with its own employees and under the direction and supervision of officers and agents of that governmental agency. In the performance of the work the defendant, through his employees, used dynamite caps which were fired with explosives and liable to blast by shock. The evidence satisfactorily shows that the dynamite caps and explosives used by the defendant in the aforesaid work were identical with the cap and cardboard implement found by the minor plaintiff at the edge of the road being reconstructed and identical with the small tube or copperlike object with its 'little wire' which he discovered upon removing the cardboard and which later exploded when he struck it against the stone with the machete. The evidence also satisfactorily shows that one or four days before the accident the aforesaid employees of the defendant had employed dynamite caps in their work and that specifically, about two days previously, dynamite had been exploded at about one hundred meters from the house of the minor plaintiff. The evidence believed by the court further shows that although the place of the explosions was examined and cleaned by the employees of the defendant, at times whole explosives remained in the road, some of which were later found at the place where

the minor plaintiff found the cap, whose explosion caused him the damages for which he now claims compensation.

"5.—From the facts and circumstances related in paragraph 2 and 4 *ante*, it appears and we so conclude as a matter of fact, that the cartridge found by the minor plaintiff and whose explosion at his hands caused him the damages described, was a dynamite cap of the kind used by the defendant in the afore-said work, which remained unexploded in the road; that the defendant, through his employees, was negligent in permitting such caps to be left or to remain unexploded in the road after the explosion of the others used for that purpose and that this negligence was the proximate, direct and efficient cause of the accident described and of the consequent damages to the minor plaintiff."

Both parties have appealed from the judgment granting plaintiff a compensation of $3,000.00, plus costs. Since plaintiff's appeal refers exclusively to the amount of damages awarded to him, we shall first discuss the errors assigned by the defendant.

The first is to the effect that the trial court erred in denying its motion to dismiss. The alleged error was not committed. By Act No. 229 of 1950 (Sess. Laws, p. 586) Providencia Irizarry was authorized to file in behalf and in representation of her son a civil action against the People of Puerto Rico claiming damages "independently of the fact that the People of Puerto Rico may have or not acted through a special agent in the transactions or events which caused the accident." [1]

---

[1] Act No. 229 of 1950 insofar as pertinent reads:

"Section 1.—Providencia Irizarry, of Lajas, Puerto Rico, is hereby authorized, to sue The People of Puerto Rico in behalf and in represen-tation of her minor son, Ellis Hernán Irizarry, for the recovery of damages alleged to have been sustained by said minor when injured in an accident suffered while a road in barrio Candelaria of Lajas, Puerto Rico, was under construction. 

"Section 2.—Providencia Irizarry is hereby authorized to file the said action without first having to comply with the requisite of prior posting of bond provided for by Act No. 76 of April 13, 1916, as amended by Act No. 11 of April 18, 1928, and *independently of the fact that The People of Puerto Rico may have or not acted through a special agent* in the transactions or events which caused the accident." (Italics ours.)

The sovereign cannot be sued without its consent. *Campis* v. *People*, 67 P.R.R. 366, and cases cited at page 368. Ordinarily the People of Puerto Rico (now the Commonwealth of Puerto Rico) is liable for damages only when it acts through a special agent. [2]   It gave its consent to be sued in an action for damages in general terms by Act No. 76 of 1916, as amended in 1928.   Besides it gave its consent to plaintiff herein, specifically by Act No. 229 of 1950.   In granting plaintiff authority to file suit it relieved him of the aforesaid statutory provision of § 1803 of the Civil Code. Having been so relieved, the plaintiff did not have to prove that the People of Puerto Rico acted through a special agent. The case is the same as if it were a private employer, responsible for the actions of his agents within the scope of their employment.   See *Rodríguez* v. *People, ante,* p. 377. Under the circumstances, the trial court did not err in deciding that the complaint states facts constituting a cause of action nor in denying the motion to dismiss brought by the defendant.

■■ The next error assigned by the defendant is to the effect that the trial court erred in deciding that the People was negligent and in concluding that such negligence was the proximate cause of the damages suffered by the minor.

The findings of fact of the trial court have sufficient evidentiary support.   From those findings it appears that at that time the minor was eight years old; that on December 27, 1948 the minor was walking along a public road at whose edge he found a cardboard cap about 4½ inches long;

---

[2] Section 1803 of the Civil Code, 1930 edition, as amended by Act No. 120 of 1943 (Sess. Laws, p. 372) insofar as pertinent provides:

"Section 1803.—The obligation imposed by the preceding section is demandable not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

".   .   .   .   .   .   .   .   .   .   .

"The People of Puerto Rico is liable in this sense when it acts through a special agent, but not when the damage may have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable.

".   .   .   .   .   .   .   .   .   .   ."

that he had never seen one like it; that he immediately took it to his house, which was nearby, and once in the back yard he removed the cardboard, finding inside a copperlike tube about an inch and one fourth long with a small wire attached to one of its ends, which he placed on a stone and struck with a machete; that in so doing, the small artifact exploded in plaintiff's face causing him injuries which resulted in the loss of sight in his left eye; that at the time of the accident the defendant was carrying out the extension of the road of barrio Candelaria, under the administration and through its Department of the Interior, with its own employees and under the direction of its officers; that in the execution of that work the defendant used dynamite cartridges which were identical with the ones found by the minor; that between one and four days before the accident the employees of the defendant had employed dynamite caps in the aforesaid work; and that although the place where the explosives were used was examined and cleaned by the defendant's employees, at times there remained in the road whole explosives, some of which were later found at the place where the minor plaintiff found the caps whose explosion caused the damages for which he now claims compensation. In view of these facts, we must conclude that the defendant was negligent and that such negligence was the immediate cause of the action.

██ We can not conclude, however, that the minor plaintiff was guilty of contributory negligence. At that time he was eight years old. He had never seen dynamite caps nor explosives similar to the ones he found, and he was not aware of the danger to which he was exposed in manipulating the same. Children of tender age—as plaintiff—are not required to conform to the standards of behavior which is reasonable to expect of adults, and their conduct should be judged by the standards of behavior to be expected from a child of similar age, intelligence and experience under similar circumstances to those appearing in this case. *Alvarez* v. *Hernández*, 74 P.R.R. 460; *Cruz* v. *Rivera*, 73 P.R.R. 632;

*Figueroa* v. *Picó,* 69 P.R.R. 372; *Castro* v. *González,* 58 P.R.R. 369.

The majority of the courts in the United States have established liability on the part of a defendant in circumstances similar to or identical with those in the case at bar: negligence of a defendant in leaving explosives at places accessible to children and a subsequent positive act of a child in producing the explosion when pounding the explosive against an object. See 10 A.L.R. 2d 22 *et seq.* At page 116 the following is stated:

"Generally speaking, the courts, as in cases involving other types of explosives, have held in most cases that where blasting supplies are used or stored in such a manner as to leave them accessible to children, the particular acts of the child in taking and exploding articles of this nature do not as a matter of law constitute an independent intervening cause, so as to relieve the defendant of liability for his original negligence, at least where the child is not possessed of sufficient intelligence or understanding to realize fully the danger involved."

The third and last error assigned by defendant is that the lower court erred in sustaining the complaint and in ordering him to pay the amount of $3,000.00. The only error assigned by the plaintiff challenges the amount of compensation as insufficient. Therefore, both errors may be considered jointly.

From the findings of facts set forth, it appears that the minor plaintiff has totally and permanently lost the vision in his left eye, and according to the opinion of the specialist who attended him, his eye also must me removed later since there is danger of sympathetic ophthalmia in the right eye, that is, there is danger that the minor may become totally blind. Considering the former conclusions, we believe that a greater compensation should have been granted. We consider that it should be increased to the sum of $15,000.00.

The judgment appealed from must be modified in the manner indicated and, as modified, it is affirmed.

MR. JUSTICE NEGRÓN FERNÁNDEZ with whom MR. JUSTICE PÉREZ PIMENTEL concurs, concurring.

The points of view set forth by Mr. Justice Ortiz in his learned concurring opinion to declare in force, in the present state of our law, the rule of comparative negligence—the application of which in this case, as wisely stated by Mr. Justice Sifre, is not justified by the facts proved herein—compel me to express my opinion that that rule, at least with respect to the apportionment of damages, cannot be adopted by mere judicial *fiat*. There is need for legislation to establish—once the court determines that the cause of the damages was a concurrence of fault—the standards which must govern the consequences of such determination. The absence of those standards in our positive law cannot be supplied by judicial power at its whim. Lawson, *Negligence in the Civil Law*, (1950).

I am not making here a balance of the moral values involved in the doctrine of comparative negligence as a juridical standard containing a better sense of justice. I am not objecting, nor do I object because of the intrinsic merit of its social usefulness—to the doctrine itself. Its *desirability* has nothing to do with the impropriety of its applicability. Its judicial adoption would not be, in my opinion, authorized under the present state of our legislation. In the interpretation of the statutes the judicial authority cannot be so broad as to impinge on the functions and powers which dwell in the legislative branch. A decision of this Court tending to choose one of the several formulas expressly established by statute for the apportionment of damages in those jurisdictions which have adopted the doctrine of comparative negligence, would indeed be capricious, arbitrary and untenable: to fix the amount of recovery at 80 per cent of the total damage estimated when the plaintiff has contributed 20 per cent to his own damages; or to fix it at 60 per cent in that same case because 20 per cent of the contributory negligence should condone 20 per cent of the 80 per cent of the defendant's liability; or to fix it automatically at 50 per cent as long as there

is contributory negligence. See *Comparative Negligence, Pro-Con*, 28 Journal of the State Bar of California 22 *et seq.*

The matter under discussion falls within the ambit of the public policy of the State, which is no province of the judicial power. I believe in the necessary evolution of the law and in the re-examination and modification of jurisprudential concepts and doctrines, as a judicial function essential to maintain the progress of the ideals of superation and of justice to mankind. But I cannot concur in progress through a process of glorifying judicial omnipotence at the expense of legislative power.

Mr. Justice Ortiz, with whom Mr. Chief Justice Snyder and Mr. Justice Belaval concur, concurring.

I concur with the opinion of the court in the case at bar, as to the amount of compensation to be paid by the defendant, and as to its obligation of paying the damages because of its agents' negligence. But I disagree with some of the grounds on which this Court has based its conclusion. I believe that, although the majority opinion is per curiam, the points of view which I shall set forth in the course of this opinion are of sufficient importance to justify an elaborate development of my thesis.

I agree with the postulate that defendant's agents were negligent. But their negligent conduct was not the sole cause of the entire damages suffered by minor Ellis Hernán Irizarry. The causation of the accident is due, in part, although slightly, to the negligent conduct of the child himself. In the majority opinion it is stated that the child was not guilty of contributory negligence. I disagree with that conclusion. I believe that the minor in question was somewhat careless and negligent, to a certain extent, and that his fault, although slight, contributed to the accident and that, therefore, the minor may be charged with contributory negligence

as I shall hereafter try to prove. But I also believe that the fact that the child is guilty of contributory negligence, must not wholly relieve defendant from liability. I am convinced that, in these situations where both parties are negligent, the degree and magnitude of the negligence of each party should be compared, and that where there are two causes of the accident and of the damages, that is, where the accident is caused by the negligence of both defendant and plaintiff, their share in the cause should be measured and compared for the purpose of fixing the defendant's liability. Of course, if defendant's negligent conduct appears to be the superior or greater cause of the accident, he should be held liable but not as to the whole of the damages, since the victim himself has also contributed, although in a lesser degree, to the cause of those damages. The victim's contributory negligence should serve to mitigate, attenuate, or reduce the pecuniary responsibility of the defendant, but not to wholly relieve defendant from responsibility. In other words, I believe that the doctrine of contributory negligence as total exoneration of defendant's responsibility irrespective of the magnitude of the contributory negligence should be renounced in this jurisdiction, and I believe that we should adopt the doctrine of comparative negligence which has been accepted at present by a majority of the countries of the world, and by a great majority of modern writers.

The doctrine of contributory negligence, as wholly exonerating a party from liability, is clearly unfair and contrary to the physical realities related to causation, and it is contrary to our Civil Code. It has been judicially created and artificially incorporated into our legal system through undue application of the old principles of the common law, which are inapplicable to the realities of our specific environment. At present it has been repudiated even in England where the concept originated. On the other hand, as we shall see hereafter, the doctrine of comparative negligence is compatible with the provisions of our Civil Code, and it

is precisely the doctrine of the civil law in general, even prior to the enactment of the Spanish Civil Code.

Let us choose a specific situation to illustrate the general problem. Defendant drives his vehicle at an excessive speed of about 90 miles per hour. All of a sudden a pedestrian attempts to cross the street negligently and an accident occurs. Comparing the negligence of both parties and the degree of participation in the causation attributed by each one, let us assume that the greater negligence of the defendant, as one of the two causes of the accident, represents 80 per cent of the cause of the accident, and that the contributory negligence of the pedestrian, relatively less in degree, is 20 per cent of the cause. Under the doctrine of contributory negligence prevailing now in Puerto Rico, the fact that the pedestrian has also been negligent, *wholly* relieves defendant from liability, although the latter has been guilty of extreme negligence which has contributed in a much greater degree to the accident than plaintiff's lesser negligence. Apparently, the present doctrine of contributory negligence is predicated on the postulate that if the injured party is guilty of contributory negligence, that alone wholly exonerates the defendant irrespective of the importance or gravity of that contribution, that is, to hold defendant liable, his negligence must be *the sole* cause of the accident. We find nothing in § 1802 of our Civil Code which provides that a negligent defendant is liable only when his negligence is the sole cause of the accident. The sole-cause requisite is contrary to justice and to the reality of things. Reality indicates that the accident illustrated is due to two causes, and that both have caused the accident. It is fair that the defendant in the example given should only answer for 80 per cent of the damages caused, since, as a matter of fact, he has caused that 80 per cent of the damages. But it is not fair that the defendant be wholly exonerated because of the fact that the pedestrian caused 20 per cent of his own damages. From that angle, it is not a question of "who was to blame" but

"who was more to blame" or "who caused the greater damages," in order to fix liability.

In the United States the most outstanding commentators have criticized harshly the contributory negligence doctrine. 28 Chicago-Kent L. Rev. 189, 304, copies of June and September, 1950, Ernest A. Jurk, *Comparative Negligence on the March;* 51 Mich. L. Rev. 465, copy of February, 1953, Prosser, *Comparative Negligence*, 99 Pa. L. Rev. 572, 766; 17 Corn. L. Q. 333, 604, *A Study of Comparative Negligence;* 6 La. L. Rev. 125: *Comparative Negligence—Louisiana's Heritage;* 11 Tulane L. Rev. 112: *Comparative Negligence in Louisiana;* 39 Ill. L. Rev. 36, 116, 197, Green, *Illinois Negligence Law*, 36, 116; 32 Yale L. J. 691, copy of April, 1953, Fleming James Jr.: *Contributory Negligence.* Professor Green, in his article *The Individual's Protection under Negligence Law*: *Risk Sharing*, in 47 Northwestern L. Rev. 751, 757: *Symposiem Issue on the Law of Torts*, states that the doctrine of contributory negligence is the cruelest and most indefensible doctrine of the Common Law. Professor James, of the Yale Law School, states in his article: *Contributory Negligence* in the copy of April, 1953, that there is no justification in either policy or doctrine, for the "all-or-nothing" rule as to liability, it being a Draconian rule sired by a medieval concept of cause, out of a heartless "laissez faire." The criticism formulated against the doctrine, insofar as it totally exonerates a defendant from liability, may be summarized as follows:

(1) It is unfair that a defendant who has been negligent to a greater degree than a plaintiff be wholly exonerated from responsibility by the mere fact that the plaintiff has also been negligent although in a less degree and magnitude than the defendant. Such formula does not establish an adequate balance of equities. It would be preferable that the responsibility of both parties be commensurate with the degree or scope of their respective negligent conduct, that is, that the responsibility be apportioned or distributed according to the

magnitude of the negligence of each party under the doctrine of "comparative negligence." It is unfair that the driver of a vehicle travelling on the left-hand side of the road at a speed of 100 miles per hour be wholly exonerated from liability because another vehicle with which it has collided came in an opposite direction at an excessive speed, but less than that of defendant's vehicle, or because a pedestrian negligently tried to cross the street. Defendant's liability should be mitigated or reduced by virtue of plaintiff's negligence, but it should not be totally eliminated.

(2) An attempt has been made to justify the doctrine of contributory negligence as an instrument for the complete exoneration of defendant from liability, on the basis of the theory of causation, that is, that if a plaintiff has been negligent, the defendant's negligence is not the cause of the accident. The essential error of that theory consists in its assumption that there should be, juridically speaking, a sole cause of the accident. That juridical fiction does not fit the physical reality of the facts since the accident may be produced by diverse causes. James, *Contributory Negligence*, 62 Yale L. J. 691, 697. Precisely in those cases where plaintiff's negligence is the sole cause of the accident there is neither need nor room for the doctrine of contributory negligence since in such a case the defendant would never be responsible, irrespective of plaintiff's negligence. James, *op. cit.*, 62 Yale L. J. 697. The rule of contributory negligence could be theoretically invoked when both parties have been negligent or when the negligence of both parties are contributing proximate causes of the damages. If we assume, as we should, the concept of multiple proximate causes, it would involve the elimination of the rule of the sole cause, and it would imply the application of the rule of proportional division of damages and liabilities, according to the magnitude and degree of the negligence of both parties, and according to the contribution of each party to the cause of the

accident. Since it would be a case of concurring or contributory causes, the scope of each cause should be measured for the purpose of fixing responsibility.

Since we have entered this field, let us make a digression which could be useful in the solution of the problem as to the aspect of causation. The concept of "proximate cause" has been the heated concern of students of tort law. It has been recently characterized as giving rise to "a cancerous growth of proximate causation refinements" 47 Northwestern L. Rev. 759. Diverse theories have been presented: See the article *Legal Cause* in 60 Yale L. J. 761.

(a) That of the necessary causal antecedent where a *sine qua non* condition is considered as a cause in order to produce a specific result, that is, that the accident would not have occurred but for a certain act or omission. This theory could be useful if it were interpreted in harmony with the acknowledgment of the possible existence of multiple causes and if to it is added the factor of "foreseeability," an essential part of the concept of negligence.

(b) Cause is that which constitutes a substantial or predominant factor in producing harm. *Restatement of the Law of Torts*, § 431, as it was characterized in the Supplement of 1948 to include the concept of "foreseeability." This theory is in agreement with the artificial theory of "sole cause." As a matter of physical reality there may be causes contributing to the accident which are neither predominant nor substantial.

(c) The theory of foreseeability, that is, that the damage be the proximate consequence of the act or omission. *Cf. Portalatín* v. *Alers*, 69 P.R.R. 697. This is already a part of the definition of negligence, and not of cause, as a matter of fact and of physical reality.

The commentators on the civil law have also expressed their theories on that point. Colombo, *Culpa Aquiliana*, 138 *et seq.: Nueva Enciclopedia Jurídica*, Vol. 3, p. 786, 792, and among the interpretations given, we find the doctrine of

the equivalence of the conditions, according to which the event is the result of a combination of forces which flow together into a cause from which everything that ensues is a consequence. We also find the doctrines of efficient cause, of proximate cause and of the "adequate cause," under which the event from which the responsibility issues is selected to bear the damage caused when the damage was foreseeable, there being no liability when damage arises through supervening extraordinary circumstances which are beyond every day experience.

The Supreme Court of Spain has passed upon this question. In its judgment of January 25, 1933 it refused to accept in a concrete manner any specific doctrine of causation, stating that the jurisprudence cannot be utilized in the philosophical discussion of that subject, and that the trial judge must consider in each case the question of causation as one of fact, giving his attention to the "compensatory trend of the law." In its judgment of February 22, 1946 it holds that the legal cause is one which has a logical and direct connection with a specific result.

From the point of view of the case at bar, the action of defendant's agents was the legal cause of the damages suffered by the child, under any of the theories above mentioned, and the child's conduct was also the cause of the accident. From a general point of view, we must adopt the following rules:

(1) The question of causation is one of fact, to be decided by a trial judge in each case, according to the realities of each particular case.

(2) There must be a logical connection between a cause and its effect.

(3) An accident may result from multiple causes, that is, the damage may arise from several concurring causes, and the trial court must make its holding on the relative importance, degree and magnitude of each cause, and as to the proportional contribution of each cause to the damage

produced, for the purposes of assigning a proportional distribution of liabilities. This concept corresponds to the reality of the co-existence of causes. We agree with Borrel Maciá when he says at page 65 of *Responsabilidades Derivadas de Culpa Extracontractual*: .

"In practice, the facts are not customarily simple; rather the causes appear confused and from the concurrence of several of those causes and of certain conditions or circumstances, the damage ensues.

"When the damage is the consequence of two or more causes, each person at fault must answer for whatever he is liable..."

The doctrine of contributory negligence began to develop in England at the beginning of the nineteenth century. It was a juridical postulate which answered to a specific economic situation. During the first stages of the Industrial Revolution, the State assumed a passive attitude as regards the private initiative of laissez faire. Apparently the courts wanted to reduce the burden to be assumed by employers in industrial accidents, by establishing an exception to the principle of liability due to negligence, that is, by sanctioning the doctrine of contributory negligence. See the afore-cited articles of James, Prosser, Turk and Green. This was especially true as to railroad accidents, in order to encourage the expansion of railroads. But a hundred years later that doctrine is unnecessary and inconsistent with the general welfare, insofar as, we repeat, it totally exonerates a defendant from liability, irrespective of plaintiff's degree of negligence. In Puerto Rico particularly, there has not been the same need and economic urge that prevailed in the Anglo Saxon countries at the beginning of the last century.

## COMMON FAULT UNDER THE CIVIL LAW

We have characterized the doctrine of apportionment of damages according to the degree and magnitude of the negligence of both parties as one of "comparative negligence." The same doctrine, although not with that specific name,

prevails almost universally in a host of countries ruled by the civil law system, with the sad exception of Puerto Rico. In those countries, the theory of comparative negligence is expressed in terms of apportionment of fault, within the general theory of the common fault, that is, of negligence of both parties. And in some of those countries, notably in France and in Argentina, which are characterized by the maturity and the preeminent development of their judicial systems, they have adopted, for more than a century in the case of France, the doctrine of apportionment of damages according to the degree of negligence and of causation of each party, precisely on the basis of statutory provisions identical with § 1802 of our Civil Code. I have not found a single country under the civil law, except Puerto Rico, where in a case when plaintiff's negligence is less than that of the defendant, the contributory negligence doctrine has been adopted as a complete dismissal from liability.

The Roman law dismissed a defendant from liability by virtue of the victim's negligence only when the latter's negligence was the sole cause of the accident, or when the defendant himself was not negligent, but it did not recognize the doctrine of contributory negligence as it has been applied at present. Turk, *Comparative Negligence*, 28 Chicago-Kent L. Rev. 189, 208–215; 6 La. Rev. 125; 11 Tulane L. Rev. 112. Giorgi, in his work *Teoría de las Obligaciones*, Vol. 5, p. 247, states that the civil law based on the Roman law recognizes the principle of apportionment of faults which totally neutralize each other, but "it follows, from the very nature of the rule set forth, that the faults, in order to be recoverable, must be of the same degree; the slight fault would not be set off against gross fault or fraud." On the other hand, the best evidence shows us that the Aquilian law authorized the doctrine of comparative negligence, by establishing certain degrees of faults, and by determining that the slight or very slight fault could give rise to liability commensurate with the degree of fault. 8 Manresa 184,

185, 5th ed.   Hillyer, in his article: *Comparative Negligence in Louisiana*, 11 Tulane L. Rev. 112, 119 *et seq.*, states that the Roman .jurists highly disfavored the contributory negligence doctrine insofar as it defeated the responsibility of a defendant, but that in the Aquilian law there is basis for the conclusion that the fault or negligence of both parties would be compared and their respective responsibility determined according to the amount or degree of fault or negligence attributable to each one, thereby implying a proportional division of damages or losses or a mitigation of the damages to be paid by a defendant.

Article 1382 of the French Civil Code corresponds closely to § 1802 of ours, since it determines that "any person who by an act causes damage to another by his fault shall be obliged to repair it."   The courts of France have established that the ambiguity of that article warrants the application of the doctrine of comparative negligence, as we have defined it in the former paragraph.   11 Tulane L. Rev. 114.   In 20 Laurent 478, the following is stated in construing §§ 1382 and 1383 of the French Civil Code:

"...Article 1382 establishes the principle that a prejudicial act only gives rise to reparation when there is *fault*, but it does not determine the elements of that fault.   There are degrees of faults: Any fault, no matter how slight bounds the wrongdoer to repair it.   It may be said that § 1382 so assumes, since it avails itself of the word *fault* without restricting it..."

In the same way we can say that our § 1802 uses the words *fault or negligence* without limiting them, admitting, therefore, the concept of degrees of negligence.

In 20 Laurent 609 the following is stated:

"The maxim no longer applies when fault is imputed to the person whose acts have occasioned damage although the aggrieved party may also be found guilty of negligence.   We must bear in mind the fundamental principle of this subject matter, which is that the slightest fault bears responsibility; it follows that the negligence of the victim does not remove the fault of the wrongdoer, unless it is proved that such negligence was the

sole cause of the damage. If it is not the sole cause, there is another cause borne by the wrongdoer, and no matter how slight, it makes him liable. These are the terms of the judgment of the court of Lieja, and we believe this to be the true doctrine. He who by his own act causes the damage, could have taken steps to prevent it; if he failed to do so, he is at fault and therefore, he may be sued for damages.

"Authorities have taken this view: A passenger insists on sitting in a car which is already crowded; the car overturns because of the excessive load: may the passenger sue? The affirmative was the fair judgment. It must be considered whether in spite of the passenger's imprudence the conductor is at fault, and this cannot be denied. It is not incumbent on the passenger, who is always ready to depart, to foresee and avoid the danger ensuing from an excessive load; that is the driver's duty; he does not fulfill his duty in receiving the passenger; therefore he is guilty for having consented to the passenger's wish. In that case, the fault could not be denied, for it constituted a violation of the regulations on the part of the conductor, and any violation is a civil offense. A judgment of the Court of Riom is cited as not in line with this doctrine. Actually it agrees with it, since it orders the conductor to pay for the damages; but in the assessment of those damages, it takes into consideration the fault of the passenger, which is the application of a general principle, as we shall hereafter set forth. Nothing is fairer; if the imprudence of the passenger does not relieve the conductor of fault, it at least diminishes it, and the recovery must be proportional to the fault."

At page 614 the following is stated:

"The most natural consequence of the fault is not to dismiss the wrongdoer from all responsibility, but to diminish his liability so that the damages which he must pay are proportional to the magnitude of the fault, and that the latter is diminished when the damage is partly attributed to the fault of the victim. Such is the case law. A laborer mounts an engine in order to lubricate it; the engine, which is wrongly adjusted, injures the laborer. The company answered his claim for damages by stating that the laborer was guilty, since he did not have to mount the engine in order to lubricate it. The court of Seine, taking into consideration other circumstances, decided that a reduction in the compensation for damages was proper; on

appeal, the court increased the amount of compensation because the fault of the company was proportionally greater than the fault attributed to the laborer.

"It may happen that the common faults of both parties be of such nature as to exclude all cause of liability. When the plaintiff is at fault together with the defendant for the same offense with which he charges the latter, he may not be awarded damages, because the compensation for damages which he would obtain thereunder must be returned after the judgment is rendered in favor of the opposing party; so that the damages which he would receive are set off by those which he must in turn pay. ..."

In Planiol-Ripert, *Derecho Civil Francés*, Vol. 6, p. 749, the following is stated:

Where the victim is at fault, when the latter's fault is considered as a concurring cause of the damage, the liability shall be apportioned by the trial courts, which shall freely weigh the share of responsibility of each one..."

At page 784 of the same work the following is stated:

"Common Fault.—But, the fault of the victim does not dismiss the wrongdoer from responsibility if he would have likewise become liable for causal fault; it only produces the sharing of responsibility. The Court of Cassation leaves to the trial courts the mission of freely weighing the share of damages to be imputed to the victim although it requires that he be not wholly exonerated. This is in consonance with the theory of the equivalence of conditions according to which the antecedents of the damage have constituted without a single exception, the essential links of the chain of causation.

"For the apportionment of damages, the courts take as a basis the greater or lesser connection between the wrongful act and the damage, but particularly in the respective gravity of the faults. Such is the rule consecrated in relation to collision between ships by § 407 of the Code of Commerce modified by the act of July 15, 1915."

In footnote (2) of page 784 of the cited work of Planiol-Ripert the decision of the Court of Cassation (applicable to our § 1802) is reproduced as follows:

"(2) Article 1382—expresses—does not limit the responsibility of that person, through whose fault an accident has occurred, to the assumption that his fault has been the sole and immediate cause of the accident; if the injured person has also been imprudent, that circumstance may, undoubtedly, authorize the court to reduce the amount of damages, but it may not completely free from responsibility the person whose fault contributed to a certain extent to produce the accident or aggravate its consequences.' "

Demolombe, in his work *Cours de Code Napoleon*, Vol. 31, p. 434 states the following (free translation of the writer of this opinion) :

"Who is to blame? That is almost always the question posed in this kind of case. Undoubtedly, it may happen that the entire fault be imputable to a single party, in which case that party shall answer for the damages, when no fault may be imputed to the injured party.

"But that is not the usual case. Most frequently both parties contribute to the damage. Then we confront the theory of 'the common fault,' which plays an important role in this kind of problem.

"Not that this theory presents great difficulties in our Law.

"At the outset, it is evident that the fact that the injured party has himself committed a fault, imprudence or negligence, shall not free from all responsibility the other party (defendant, our note) who has wronged the former through his fault or negligence.

"We also find that this principle is consecrated by a judgment of the Court of Cassation, a judgment which is still more notable because it set aside a judgment rendered by the court of Amiens on this matter holding the contrary. The following was stated:

" 'In view of articles 1382 and 1383 of the Civil Code and considering that those articles (analogous to our §§ 1802 and 1803, our note) *do not limit* the responsibility which they impose on the person who is at fault to the single case where his fault is the sole and immediate cause of the accident, if the injured party himself has been imprudent, that circumstance may undoubtedly authorize the courts *to mitigate* the indemnity, but not to relieve from all obligation the defendant who

has contributed with his fault to the accident from total obligation.' (Judgment of August 20, 1879). (Italics ours.)

"Each person must bear his share of responsibility. If both are equally liable, there being common fault, equal for both, then the two responsibilities mutually cancel or compensate each other, and there is no assessment of damages. But if the responsibilities are unequal, because they are of different degrees within the common fault, then each party must bear his share of the damages, in the measure and in proportion to the fault that may be attributed to each... It is incumbent on the magistrates to determine the measure and proportion, according to the circumstances of each case... (page 442) and consider within their discretionary power, the share of responsibility corresponding to each one of them, or whether both responsibilities compensate each other or are wholly cancelled."

In *Cours de Droit Civil Français*, by Aubury and Rau, Vol. 6, pp. 368, 369, it is stated, according to my free translation:

"If both the party who causes the damage and the party injured have been at fault, it is within the discretion of the judge to determine if there has been responsibility and to fix the share of the damages imputable to the defendant. . . . Contemporary authorities on this doctrine of common fault are abundant. (Cases cited.)"

Section 1109 of the Civil Code of Argentina is substantially identical with our § 1802, since it determines that "any person who by an act causes damage to another by his fault or negligence shall be liable for the damage so done." The doctrine prevailing in Argentina is to the effect that this Section does not require, in order to hold a negligent defendant liable, that his negligence be the sole cause of the accident, and that, if both parties are negligent, the damages should be distributed or divided in proportion to the degree of negligence of each one, and according to their respective share in the causation of the accident. Colombo, in *Culpa Aquiliana* makes an extremely interesting statement regarding the doctrine of the civil law and it deserves a lengthy citation. From pages 179 *et seq.* the following is copied:

"Both parties may be at fault: the wrongdoer as well as the victim, for if the former has been negligent by his act or

omission, the latter may have also been negligent by placing himself, because of his lack of foresight, in such a situation that the consequences of the event may also be imputable to him. We would then be dealing with what is known as 'concurring fault' or 'common fault,' which, although it does not dismiss the principal agent's liability, mitigates it as to the obligation to compensate arising from the act.

"As Demogue aptly puts it in his masterpiece, the explanation of the phenomenon is found in the causal connection between the damage and the wrongful act, which does not spring from one of the interested parties—either the wrongdoer or the victim—but from both at once who, by virtue of their mutual fault are linked by that relation. Therefore, if the two acts are isolated—that of the material wrongdoer and that of the victim—it is proved that each one is sufficient by itself to integrate or perfect the offense, as would be the case in motor accidents brought about by the excessive speed at which the vehicle is driven and by the imprudence of the pedestrian in crossing a street while reading a newspaper without looking towards the direction of the traffic.

"Because they have a direct bearing here, we shall copy the words of that jurist: 'Thus—he states—the majority of the writers have been concerned with the subject of causation to determine whether the guilty victim may, however, demand indemnity. That is the true subject matter, provided it is added that the solution of the problem should be contemplated from a social point of view, bearing in mind the social welfare in encouraging prudence. That is, in fact, the underlying idea pervading the whole question. Therefore, it may be easily explained that the victim, if the damage issues from his own imprudence can make no claim, for his fault only injures his personal rights.' And he adds, in the next breath: 'The wrongdoer shall be liable, at least partially, if he could have foreseen the damage according to the normal course of the events, especially if he was aware of the victim's fault or could have become aware or foreseen it. Contrariwise, he shall not be at fault. Let us consider, as a whole, the problem as to the victim. If his act is not blameworthy (insanity, intoxication), only the wrongdoer's fault shall be taken into consideration and the victim's right shall not be altered, for he may not be blamed for a socially reprehensible act.'

"Even if these reasons are all alike, they have not sufficed to consolidate an opinion regarding the method of regulating the situation of the interested parties. Among the different opposed opinions, two are outstanding because of their simplicity: (a) that of the compensation of faults, and (b) that of the apportionment of damages. We shall pass upon them rapidly:

"a) For the purpose of compensation, the faults cancel each other, annul each other, because being imputable to the wrong-doer as well as to the victim, the latter has no right to claim compensation for the damages he suffers, since ultimately he is an involuntary accomplice of the illicit event. This happened in the Roman law when a man had himself shaved at the base-ball field and was wounded because the ball hit the barber's hand, swerving it, inasmuch as it was gross negligence to perform such operation where it was not safe to do so.

"But compensation can not arise without the concurrence of several requirements to make it feasible: 1st, That the offense be preceded, accompanied or followed by the victim's fault; 2d, That the faults be of the same degree, that is, equal; 3d, That the damages be also equal. The absence of any of these conditions would create an imbalance such as would bar said compensation, for one of the two parties would be in a more disadvantageous position than the other. Hence, if the faults are not equal the compensation would violate two juridical principles governing the matter: that each one should bear the loss in the amount that he has contributed to its causation, and that nobody should bear the responsibility and the damage caused by another.

"b) That is why that theory, mathematically attractive in its external features, flows into another, that of the apportionment, when the aforesaid inequality appears, which is the general case. Let us see the statements of Demolombe in his classic book, of marvelous simplicity and clearness of exposition: 'Is the fault exactly the same for one party as for the other? The two responsibilities cancel and compensate each other; an award for damages and interests does not lie. And if the liabilities are unequal because there are degrees in the faults committed, each one must pay indemnity for the damages proportional to the degree of fault attributable to each. It is the duty of the magistrates to determine this degree and this proportion, according to such different, complicated and, we may add, at times vague circumstances which might arise.'

*"This is a more scientific doctrine and it agrees better with reality.* If the unimputability vanishes, if the wrongdoer and the victim are at fault and the consequences of their conduct must be attributed to them jointly, it is only fair that the liability of the material wrongdoer be mitigated up to where it coincides with the individual liability of the victim, and that the judgments, in view of the special conditions of each case, establish the amount of recovery and the method to make it effective. *Thus the demand which we have invoked in the preceding lines shall be fulfilled, that is, that each person should meet the obligation derived from his fault in the proportion to which he has contributed to cause it.*

"Now then; since in practice it is very difficult to determine with precision, quantitatively, the influence that each one of the faults has exercised in producing the damage caused, even when the individualization of the same be feasible, several systems have been proposed which, upon circumventing the injustice that would arise if the whole damage would be paid by only one of the parties at fault, might allow at least an adequate reparation by distributing the damage among all the liable parties.

"Some, by the reasons set forth, plead that the damage be divided in proportional shares, in halves or better still, that it be not paid wholly by the wrongdoer alone. The Austrian Civil Code of 1811 for example states in § 1304: 'If an injured party is guilty of contributory negligence, he is to be liable proportionately; and if the correct proportion cannot be determined, then equally with the defendant.'

"Other foreign legal codes contain analogous provisions which, because they are instructive, should be well borne in mind. We shall copy the three most suggestive ones:

"German Civil Code: 'Article 254: If any fault of the injured party has contributed to the occurrence of the damage, the duty to compensate and the extent of the compensation to be made depend upon the circumstances, especially upon how far the injury has been caused predominantly by the one or the other party. This applies also if the fault of the injured party was limited to omission to call the attention of the debtor to the danger of unusual serious damage, of which the debtor neither knew nor ought to have known, or to an omission to avert or mitigate the damage.'

"The Swiss Code of Obligations: 'Article 44: The judge may reduce the damages or even deny them, when the injured party has contributed to the damage or when the acts for which he is liable have contributed to create or increase the damage, or when they have aggravated the situation of the wrongdoer.'

"Civil Code of Chile: 'Article 2330: The assessment for damages is subject to mitigation if the victim exposed himself to it imprudently.'

"We believe that it is neither possible nor convenient to establish a stern rule. The enormous multiplicity of variations that daily events offer preclude any harsh rule and it would be useless to attempt strict adherence to a single law. It is the free and correct judicial assessment which must determine in every suit to what extent the wrongdoer's liability diminishes and to what extent the victim's increases correlatively. All the theories, when submitted to the test of litigation where the difference between the fault of the two parties is obvious, end up by reaching this solution, which offers the undeniable virtue of being concrete, elastic and prudent.

"The Argentine Civil Code contains no rule on that subject, but reaches the same conclusion—that is, that the Aquilian common fault mitigates the liability—by the subtlety of §§ 1109 and 1111 insofar as the former provides that 'any person who by an act causes damage to another by his fault or negligence shall be liable for the damage so done,' and as to the latter it provides that 'the act that causes no damage to the person who suffers it but for a fault imputable to him bears no liability.' It being so, no attempt at dialectic or lengthy argument is required, indeed, to perceive that *each one shall bear his share of the fault in the event and, hence its consequences. The act is imputable to both parties and both, in the name of equity and justice, cannot excuse themselves from making effective the pertinent indemnity: the wrongdoer, in a less proportion than would have corresponded to him had the victim not been at fault, and the latter, receiving a smaller compensation than he would have received otherwise.*

"The jurisprudence of the national courts, as was to be expected, studied the matter in countless instances. The judgments rendered on that point are abundant and from their systematic orders the following rules may be deduced:

"1st—Contributory negligence does not dismiss liability. It could, if the fault were equal on both sides.

"2d—It determines mutual liability, in relation to which the judge should fix, proportionally, the damages suffered.

"3d—It diminishes, therefore, the amount of compensation.

"4th—It must be borne in mind, in order to apportion the compensation to be paid.

"On this same score, the Bill of Reforms, in article 869, second part, proposes this solution: 'If the fault of the injured party contributed to cause the damage, the amount of compensation shall be reduced in that proportion,' a rule which has the dual defect of its poor literature and its meager clearness, for it is unknown whether such proportion refers to the fault or to the damage. We believe it is better drafted in the following manner, in line with what we have already stated: 'If the fault were common, the magistrate, according to the circumstances of each case, shall reduce the amount of compensation and even release the wrongdoer from it.' "

Practically all the civil law jurisdictions have accepted the comparative negligence system. 17 Corn. L. Q. 333, 337; 11 Tulane L. Rev. 114. The same doctrine is followed in Germany, Austria, Switzerland, Portugal and Canada. 28 Chicago-Kent L. Rev. 238 *et seq.* In 1945, the Motherland of the common law repudiated its spurious daughter, the doctrine of contributory negligence, as a total exonerator of liability. The English Law Reform Act approved in 1945 provides in part, that in case of common fault, a claim for damages shall not be defeated by the presence of fault on the part of the victim but that the damage shall be apportioned as the couurt shall think just and equitable, having regard to the claimant's share in the responsibility. 28 Chicago-Kent L. Rev. 245; 51 Mich. L. Rev. 466, 467, copy of February 1953, where the statutes of all the provinces of Canada, New Zealand and Australia are also cited, reaching the conclusion that there is little left of the old rule of contributory negligence in the British Empire. See also Friedman, *Law and Social Change in Contemporary Britain*, 73 *et seq.*, 260. In 28 Chicago-Kent L. Rev. 345, the Contributory Negligence Act of 1937 of the province of Alberta, Canada, is cited as a model. It provides in part that where by the fault of two or

more persons damage or loss is caused to one or more of them, the liability to make good the damage shall be in proportion to the degree in which such person was at fault and that in any action the amount of damage or loss, and the degrees of fault shall be questions of fact for the court of first instance.

It is odd that the Supreme Court of Spain has delivered few opinions on the problem of the common fault or of contributory negligence, and that in those few opinions the scope of the doctrine has not been specifically outlined. But the precedents in the other countries ruled by the Civil law are so abundant as regards the degrees of negligence and the proportional distribution of damages when common fault is present, that the fact that Spain is in the rear-guard on this subject does not imply that we have to follow Spain blindly and refrain from placing ourselves in the vanguard with almost all the other countries which have adopted the doctrine of the common fault and the proportional distribution of the liabilities. In any event, the Spanish Civil Code adopted as its model, to a great extent, the Code Napoleon. Article 1902 of the Spanish Code, concomitant to our § 1802, is an almost identical reproduction of § 1382 of the French Code, and before approving the Spanish Code, France had already construed § 1382 as requiring the doctrine of the proportional division of damages.

In Spain, the doctrine of comparative negligence took root in *Las Siete Partidas*. 11 Tulane L. Rev. 121, 122. Especially *Partida* 7, Title 33, Law 11 establishes the degrees of fault, for example, as to the slight and the very slight fault.

Let us examine the Spanish jurisprudence. We must distinguish those cases where it has been held that the defendant is not liable if he has not been negligent at all or if there has been an unforeseeable or fortuitous event, or the result of a sudden emergency. Our problem refers to the case where both parties have been negligent, and where the contributory negligence of the victim has been of less magnitude than that

of the defendant, and his participation in the causation of the accident has been less than that of the defendant. It is true that in several cases the Supreme Court of Spain has held that a defendant is not liable when the damage has been directly imputed to the injured party, (Judgment of October 13, 1927), or when the victim's negligence is the mediate or immediate cause of the accident. Judgment of July 6, 1918. But our § 1802 (1902 of Spain), is not worded in terms of direct or immediate cause. It does not determine that a defendant is only liable when his negligence is the immediate or direct cause of the damage. It merely states that a defendant is liable for the damage he causes. He may cause a certain amount of damage even if there was another more direct and immediate cause. His act does not cease to be a cause merely because of the concurrence of another cause subsequent in time and space. Section 1802 does not require that defendant's act be *the sole* cause of the accident. It is enough if it is *a* cause which produces damage and the damage that he must repair must be measured in proportion to the magnitude and degree of *his* cause, in the production of the accident. We have already seen that, as a matter of physical reality, an act may be caused by different co-existent causes. The Supreme Court of Spain itself has rejected, subsequent to the cases cited, all those philosophical concepts regarding the "immediate or direct cause," "necessary causal antecedent" or "sine qua non" and "predominant and precluding cause" and it has decided that it is incumbent on the courts to determine the causes as a matter of real and physical fact, and to ascertain the contribution of each cause, having in mind *the compensatory trend of the law* upon fixing the indemnity. In its Judgment of January 25, 1933, the court construes § 1902 and holds:

"Whereas with respect to the lack of causal connection between the conduct of the agent and the damage produced due to the absence as petitioner suggests, of ontological,* rational or ju-

---

* Wrongly printed in the Spanish text of 207 *Jur. Civil* 316 *"no-tológicos."*

ridical links between the attachment of a ship and its shipwreck, greatly emphasized in the different theories expounded by him, the jurisprudence may not take part in the philosophical discussion which has on one side the advocates of the efficient cause and on the other those who rather look for support to the principle of sufficient reason, nor may it adopt an intermediate position in favor of the *condition sine qua non,* or of the predominant factor or of the principal circumstance or of any other causal moment vindicated by foreign techniques, and perhaps it would be enough in order to orientate the courts of justice in the decision of the concrete problems, to call their attention to the compensatory trend of the law when they try to remedy the injury sustained by a person to his faculties or patrimony, as the result of another's action or omission, by claiming compensation from the wrongdoer; or still, and less binding, it would suffice to steer the court's determination towards the assessment of the conditions or circumstances that common sense might indicate in each case as indexes of liability within the infinite chain of cause and effect."

We construe that decision as a repudiation of the theory of direct or immediate cause, and we must consider it as the prevailing rule in Spain. In other judgments of the same court it has been made clear that the victim's negligence frees defendant from liability when such negligence is the sole and exclusive cause of the accident. Judgment of March 5, 1925; of February 24, 1928 and of October 27, 1931.

In other judgments of the highest court of Spain we find the elements of the doctrine we are upholding, that of common fault and multiplicity of causes. In the judgment of December 21, 1910 the following was held:

"Whereas he who by omission causes damage to another through his fault or negligence shall be liable for the damage so done as established by Article 1902 of the Civil Code and since in the case at bar it happens that the electric wires of the *Compañía La Electricista Toledana* lacked the necessary protection to avoid accidents at the place where the event happened, a fact which the trial court affirmed and which has not been contradicted in the manner provided by paragraph 7 of Article 1692 of the Code of Civil Procedure, and that damage was caused to the young man Silva Covisa, it is obvious that the

aforesaid court upon applying the aforesaid article, did not violate it, and therefore the first cause of action does not lie:

"Whereas it does not affect the preceding conclusion that the aforesaid young man, without a fixed purpose, climbed to the roof over which the electric cable was installed because, the trial court having determined that that man did not perform the direct act alleged, of having scratched the cable with a razor, originating an electric discharge which injured his two arms, we may not infer that he suffered the damage exclusively through his own acts:

"Whereas the fair causes of exoneration sanctioned by the jurisprudence in favor of the wrongdoer, when the wrongful act is produced by the direct cause imputable to the victim, for having performed an act directly connected with the act causing the same, do not concur in the instant case, and therefore, the violation of the doctrine alleged in the second cause of action does not lie, since the trial court has made the uncontroverted finding that Silva did not perform the aforesaid act of scratching the cables, although his negligence in climbing to a roof and walking about has been established, it has not been proved that the young man went there to touch or otherwise amuse himself with the cables, *aside from the fact that if they would have been in the proper condition to avoid damages, the accident which had such sad results would not have happened* and that, therefore, it is imputable to the *Sociedad La Electricista Toledana,* for failure to have the proper installation, which has no justification whether or not there are regulations determining how it should be done." (Italics ours.)

In the Judgment of March 30, 1926, the following is held:

"Whereas the questions concerning the existence or reality of the fault or negligence and the amount of damages as a result thereof, are mere findings of fact submitted to the weighing of the trial court exclusively, without such questions being subject to attack except by showing that the judgment appealed from is erroneous either in its findings of fact or conclusions of law as prescribed by subdivision 7 of § 1692 of the Law of Civil Procedure:

"Whereas, as it appears from the judgment, the overflow of the Guadalimar River on the day of the occurrence, did not by itself cause deterioration in the dam of the mill located at Piedra del Sombrero, whose value is claimed; but immediately

thereafter it is affirmed that the damage was caused by the river because the timber was not floating in the proper tressed arrangement with *'pies muertos y maromas,'* as is the good practice among lumberjacks and these averments do not contradict the subsequent holding of the court *that the accident was due to a combination of both causes,* because the court expressly and categorically states that there was negligence, imputing fault on the part of the persons charged with floating the timber, of which the owners thereof had to be responsible; to which we must add that there was also a violation of the regulations in starting to float the timber without waiting for the expiration of the fifteen days set forth in the concession, thereby violating the provisions of the second paragraph of Article 143 of the Waters Act without that statement being contradicted by the telegram sent by the Governor of Jaén to the Mayor of Siles nor by the office of the Commander of the Civil Guard which refers to the impossibility of watching the floating timber because they had taken different courses when the aforecited river overflowed; which, as may be seen, *is not inconsistent with the fact that the proximate cause of the damage was that the timber was not properly arranged;* nor finally is the judgment inconsistent with the complaint, because of failure to mention the overflow of the river and that the damage occurred the day following the date cited; and therefore the statutory provisions invoked in the first and second causes of action have not been violated and therefore they should be dismissed." (Italics ours.)

As may be seen, this last judgment holds that the accident was due to "the combination of both causes," and that the fact that there was another cause is not contrary to the fact that the *proximate cause* of the damage was the negligence of the defendants.

The concept of the immediate cause as well as the concept of contributory negligence as tending to release from liability were set aside in the judgment of June 13, 1932, where a negligent defendant was held liable, notwithstanding the fact that plaintiff was guilty of contributory negligence, even if such contributory negligence had been the immediate cause of the accident. The following was held:

"Whereas, without denying that the immediate cause of the death by electrocution of Rafael Cerdeño was due to his own imprudence as averred in the judgment appealed from, because he climbed needlessly to the upper part of a pile of straw sixty centimeters above which crossed an electric cable of high voltage, *it is necessary to admit that the fundamental cause* was the placing of the pile of straw in such an inadequate place and exposed to a contingency of such nature; *for otherwise Cerdeño's act would not have had the unfortunate results that it had* when his body came in contact with the aforesaid cables; when the defendant noticed it, assuming that he had not ordered it to be placed thus, he should have spontaneously taken elementary steps of prudence to order its removal to a place where the danger of proximity to a cable would not exist, in order to avoid what actually happened; especially when he was repeatedly warned by an employee of the *Compañia de Electricidad* of the risk he was running if the pile of straw were not removed, asking him to move it to a safe place, in spite of which the warning was unheeded; and so it happened that in acting thus the defendant acted negligently, which is punishable by Article 1902 of the Civil Code with the subsequent indemnity for the damage caused:

"Whereas, from what has been stated in the former *Considerando* it appears that the lower court did not properly apply Article 1902 of the Civil Code in considering that the provisions of that Article did not embrace defendant, releasing him from the liability which he would have borne if it had been decided that he had acted with fault and negligence; therefore the appeal from the judgment lies without need to consider the other ground on which the appeal sought is based." (Italics ours.)

The judgment of January 18, 1936 dealt with a case of collision between a vehicle and a train. The following was held:

"That the theory of common faults, based on the opinion of the textwriters on extracontractual faults and on the foreign jurisprudence, may be adjusted to the content and scope of the general principle fixed in Article 1902 of the Civil Code.

"That notwithstanding, in order that the common fault may be apportioned or recoverable, it is essential that the faults be of the same degree and of identical juridical virtuality; which is not the case herein, since the duties to be exercised by the

railroad company must be constantly and necessarily complied with, because they affect the safety, care and vigilance of the railroad tracks, and they must not be compared with the imprudent act of the automobile driver, which depended on the belief that the train whistle would warn him of the approaching train.

"That once a court of instance weighs the common fault responsible for the damage caused, it is necessary to determine the relation between both faults inasmuch as, because of its importance, one may absorb the other or produce the mitigation of the agent's liability; and since these standards of comparison do not appear from the judgment, the company is liable to a degree of fault for its omission, because of the trascendency of the service it must discharge and excludes, therefore, the fault imputed to the petitioner."

We must bear in mind that in the last judgment rendered it is set forth that § 1902 (1802 of ours) admits the doctrine of common faults, and *it is essential that the connection existing between both be determined,* that is that both degrees of negligence be compared, as we have contended, and it is also held that a fault may cause *the mitigation of the liability,* that is, reduce the amount of damages, which entails the theory of proportional division of damages within the area of concurrence of faults or common fault. It is true that in the judgment it is stated that in order that the fault be recoverable or shared (equally) both faults must be of the same degree and of identical juridical virtuality. But that involves a different situation from the one in issue. When both faults are equal, the doctrine of compensation comes into play. But the question under discussion is where, as in the instant case, the defendant's fault is of a greater degree and magnitude than the victim's and we contend that the *lesser* contributory negligence of the plaintiff should not wholly dismiss the defendant from liability.

The learned civil writer Castán, now Chief Justice of the Supreme Court of Spain, agrees with the doctrine of common faults and the proportional division of damages, and states that the recent cases of Spain which we have cited justify the

application of that doctrine. In his work *Derecho Civil Español*, 6th revised ed., vol. 2, pp. 468, 469, the following is stated:

"c) Causal element: relation between the damage and the fault.—To prove the relation of cause and effect between the fault committed by a person and the damage suffered by another is—according to Planiol—one of the greatest hardships we meet on dealing with liability resulting from fault and, yet, it is impossible to adjudge damages if this relation is not duly proved. It is repeatedly settled by our jurisprudence in the judgments rendered. (March 7, 1902, November 12, 1904, June 16, 1905, May 17, 1913, January 28, 1919, February 15, 1924, October 5, 1932, etc.) But damage need not exclusively result from the fault, *for compensation lies even when the injured party himself has been negligent* (Judgment of December 21, 1910) or when, at the same time, both the fortituous event and the fault of the person from whom compensation is claimed have contributed to the accident. (See the judgment of March 13, 1926.)

"As Pérez and Alguer state, *neither the jurisprudence of the Supreme Court, nor any precept of the Spanish positive law are a serious obstacle where, both parties being at fault, the results of the damage may be equitably divided between the agent and the victim.* Admitting this, the judgment of January 18, 1936 states that in order that the concurrence of fault be apportioned or recoverable, it is essential that the faults be of the same degree and of identical juridical virtuality, which is not the case in a railroad accident where the trial judge establishes categorically the liability of the railroad company because of negligence and the lack of due diligence of the automobile driver injured by the train, without determining the connection existing between both faults, since if these standards of comparison do not appear from the judgment, the company is liable by its omission to a greater degree of fault because of the transcendent service entrusted to it.

"Regarding the theories outlined in foreign systems relating to the causal connection between the agent's conduct and the damage caused and the trend that the courts must follow in this question, the interesting judgment of January 25, 1953, should be read." (Italics ours.)

There is another definitive evidence to the effect that our Civil Code authorizes the reduction of the damages imputable in proportion to the degree of negligence of the parties. Section 1056 of our Civil Code, which corresponds to § 1103 of Spain provides the following:

"Section 1056.—Liability arising from negligence is also demandable in the fulfilment of *all kinds of obligations;* but *it may be mitigated* by the court, according to the case." (Italics ours.)

The courts may mitigate the liability, that is, reduce the amount of damages as to *all kinds* of obligations. That provision is applicable to actions or damages under § 1802, and both Sections should be construed jointly. Judgments of the Supreme Court of Spain of December 14, 1894 and of January 15, 1902.

In 8 Manresa 201, Fifth Edition, the following is stated:

"We must give special attention to the jurisprudence concerning the power to mitigate under § 1.103 which substitutes the old distinction mentioned in the commentary, between the different degrees of fault *for that power of limiting the liability is exercised on the basis of the correlative possible estimate of a fault slighter* than the average or normal, which determines the complete recovery of the damages.

"The court in providing that the amount to be deposited by the defendant because of his negligence should not exceed the limits fixed, was only availing itself of the discretionary power granted to it under § 1.103 of the Civil Code and recognizes the judgment of May 29, 1897, of mitigating, according to the circumstances, the liability resulting from negligence, which power, because of its character, may be exercised without a concrete petition of the parties, a claim for damages being sufficient, nor may an appeal be taken because it is not subject to regulation, but to the sound discretion of the courts, the alleged error in weighing the evidence being untenable when the court exercises its discretionary power (judgment of May 14, 1920). Analogous doctrine in the judgments of May 29, 1897, and of July 4, 1925.

"However, the judgment of April 3, 1940, states that the power referred to 'is not of an arbitrary or discretionary nature at all, since the section provides that this power shall be exercised according to the circumstances of the case, that is, according to the attendant circumstances and to the legal rules affecting them, it being clear that it should not be exercised in cases where the damage results in the recovery of amounts belonging to the injured party. Since if a different view is taken, an unlawful enrichment at his expense would be sanctioned without just cause and against the most elementary rule of equity, which is the case herein...'

"Considering these decisions as a whole we may reach the following conclusions:

"1st—The mitigating power under discussion may be exercised by the courts, as expressly stated by the judgment of May 14, 1920, *motu proprio when they observe, because of the lesser import of the causal fault, the rule of equity to the effect that the wrongdoer is not liable for all the consequences of his act or omission.*

"2d—That if the court does not avail itself of the aforesaid power, the judgment may not be challenged on the ground of failure to apply § 1.103, since the exercise of that power is discretionary with the judge.

"3d—That judgment may not be contested on appeal if the trial court shall have availed itself of that power as to the lesser or greater mitigation awarded.

"4th—That as an exception, an appeal may be taken from the judgment when the mitigation goes beyond the proper limits in the sense of failing to repair the damage at its minimum and especially if it should give rise to an unjust benefit or enrichment in favor of the debtor." (Italics ours.)

In 19 Scaevola 522 the following is stated:

"*Judicial Discretion.*—Not only in the weighing of the evidence introduced by the parties regarding the existence of fault, but also in the regulation of the corresponding liability, the Code never before more liberal, grants the judges and courts a vast power of regulation, allowing them under § 1.103 to mitigate liability according to the circumstances of the case.

"At first glance this provision seems superfluous, for it is naturally included in the power granted to the courts to weigh

the evidence freely. What greater power exists than in determining arbitrarily whether or not the fault exists?

"But § 1.103 deals with a different thing, that is, with the mitigation of the liability on the basis of the existence of fault. It is admitted that the debtor was at fault; if follows next to consider to what extent; *whether he is wholly liable for the damages or only partially;* and this, as the code states, according to the circumstances, which means, under the same doctrine of § 1.104, 'according to the character of the obligation, and the circumstances of person, time and place.'

"This doctrine, applicable to all kinds of obligations, is ratified in § 1.726 of the code in connection with the mandate, determining that the liability of the agent, in case of fault, shall depend on whether or not the agency was compensated; and in the same way when it is the case of a *negotiorum gestor* (§ 1.889) where the courts may reduce the amount of the indemnity according to the circumstances of the case.

"Reserving for the right occasion a more elaborate study of this provision, we shall now take notice of how again the greater or lesser utility received in the obligation contracted should influence the discretion of the courts in establishing the fault *and in determining the degree of liability,* duly relying on the precedents of the Roman Law." (Italics ours.)

To prove that we must take the view that our civil law system authorizes the reduction of the damages according to the degree of negligence, Manresa, Vol. 8, p. 194, 5th ed. states with crystal clearness that even dispensing with the stern classification of faults under the Roman law, the Civil Code authorizes the establishment of degrees of faults by granting the right to mitigate them. There is stated in part, the following:

"Explaining the text of §§ 1.103 and 1.104 which we are commenting on, we add by way of supplementary the foregoing:

"1. That the Code not only accepts the possibility of degrees of faults, but it avoids fixing a specific number of degrees; it attempts, under the general rule of considering the circumstances of each case, and giving the courts the power to mitigate, to extend so much *the degree* of *diligence,* and therefore of the fault, that a degree may be almost indicative for each obligation.

"2. That under such a rational test, since in each case the diligence that should be required *is the one indicated in each case,* which far from being always the same, shall vary according to the relations and acts arising in each case, it ultimately determines that consideration be given in each obligation, not only to the *abstract nature* of the relation in which it is comprised, but also to all the *elements even if accidental,* true *circumstances* that in the real existence of a *concrete* and *particular* obligation concur."

In the judgment of July 3, 1924 of the Supreme Court of Spain it is set forth that § 1056 (ours) is applicable to contractual relations. But that Article refers to all kinds of obligations. Manresa indicates in distinguishing the aforesaid judgment, and states, on page 196 of Vol. 8:

"The unity of the concept of fault is admitted in the judgment of December 14, 1894, where it is stated that, §§ 1.101, 1.103 and 1.104, are of a general character, applicable to all kinds of obligations and are not inconsistent with the special obligations of §§ 1.902 and 1.903. This decision is ratified by aforecommented articles and by what has been stated also in the commentary to § 1.101, nothing of which, in our opinion, is inconsistent with the judgment of July 3, 1924, which states that § 1.103 is only applicable to the liabilities resulting from the nonfulfillment of contractual obligations, but not to liabilities regulated in chapter II of title XVI, Vol. IV; for the judgment is based on failure to attack pursuant to the statute, that is, pursuant to paragraph 7 of § 1.692 of the Law of Civil Procedure, the weighing of the evidence made by the lower court, wherefore the allegation of § 1.103 on which petitioner rested is controverted without any further arguments."

### THE SITUATION IN PUERTO RICO

Section 1802 of our Civil Code provides:

"A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

Making an analytical dissection of this Section, it is easy to determine that it contains three essential elements, to wit:

(1) The production of damage

(2) The fault or negligence of the defendant

(3) The causation, that is, that the fault or negligence *causes damage*. There then exists the obligation to repair *the damage so done*.

Let us forget, for the time being, the first two elements, since, upon determining the effects of contributory negligence we have been assuming that there has been damage and that both parties have been negligent. The essential element, the third, is that of causation. What § 1802 tells us is that a defendant is liable if he has caused damage by his negligence. The problem then is whether he has ceased to cause damage merely because the other party has also contributed to cause the damage. The submission of the problem involves its solution. It is evident that the fact that plaintiff has been contributorily negligent does not imply, by itself, that the defendant has failed to cause damage by his negligence. Both parties have been negligent and both have contributed to cause the damage. The defendant has caused damage by his negligence, and that is what § 1802 demands in providing that, "*a person who . . . causes damage* (negligently) shall be obliged to repair *the damage so done*." The obligation to repair is limited to the damage caused, and the problem now in point refers solely to determining the damage caused by the defendant, that is, what part of the whole damage has been caused by the defendant's negligence, although another part of the whole damage may also have been caused by the contributory negligence of the victim. The problem before us is not one of negligence, because negligence is assumed. The problem as to the concurrence of fault is exclusively one of causation, which defines the bounds and limits of the obligation to repair. According to that third element of § 1802, the amount of recovery is a function, and depends on the scope of the causation attributable to the defendant's negligence. When § 1802 states that a defend-

ant answers for the *damage so done* on account of his negligence, it does not mean that defendant is liable only if his negligence has been the *sole* cause of the accident. The defendant answers for the damage he causes, but that does not mean, nor does it require, that he be the only one to cause it. The contributory negligence doctrine as an automatic exonerator of liability irrespective of its degree, is necessarily predicated on the theory that if the negligence of the defendant has not been the sole cause of the accident, that is, if the victim has contributed to the causation, then that by itself frees the defendant from liability. That theory is not authorized by § 1802, which only requires that the defendant repair the damage he causes. On the other hand, § 1802 does not require either that the act of the defendant be the "direct or immediate" cause, in order to hold him liable. That concept constitutes a judicial addition to § 1802. Not even § 1802 provides that the defendant's negligence be *the* cause of the damage. What it requires is that the defendant actually cause damage by his negligence and that he be obliged to repair the damage so done by his negligence. And we have already seen that the question of causation is one of fact and of physical reality, to be ascertained by the courts and that the realities show us that a specific result may be brought about by different causes, each one with its corresponding proportional share. If a damage has been caused by the negligent conduct of two persons, the degree of each fault should be fixed for the purpose of establishing liabilities according to the reality of the facts. The immediate cause does not exclude the reality of other previous causes which are necessary or *sine qua non* antecedents to bring about the damage.

Now then, when this Court considered fully the precedents of the civil law and the very essence of § 1802, it adopted the common law theory of contributory negligence wholly exempting from liability and laid down rules of "sole

cause" and "immediate cause" which are not justified by § .1802. For more than fifty years we have artificially incorporated into our system of law an unfair and unreal doctrine, which is contrary to civil law. Even assuming, *arguendo*, that the general terms of § .1802 justify either of the two doctrines, there should be no obstacle to the fairer and more scientific doctrine, which is the one we are favoring here and which, at least, is clearly warranted by the provisions of our Civil Code.

As regards our judicial decisions, it is important to determine the origin of the long line of opinions where this court has, incorrectly in my view, adopted the common law doctrine of contributory negligence. A federal judge in Puerto Rico decided in 1909 that under the civil law system prevailing in Puerto Rico the negligence of the injured person contributing to his injury but not one of the proximate causes of the accident, did not operate as a bar to recovery but only in reduction of his damages. *Ubeda y Salazar* v. *San Juan Light & P. Co.*, 4 Porto Rico Federal Reports 533, which relied, in part, in the case of the Philippine Islands of *Rakes* v. *Atlantic G. & P. Co.*, 7 Phil. Rep. 359.

In *Claudio* v. *Cortínez* decided on June 19, 1905 (9 P.R.R. 97) this Court for the first time speaks of contributory negligence, but relying on a special Act of March, 1902 which covered claims of laborers from their employers, because of accidents, a law which expressly provided that the employees had only a right of action if at the time of the accident they had exercised due care and diligence. Then the Court cites other cases decided in the United States which establish the doctrine of contributory negligence but the provisions of our Civil Code were in no way discussed. That opinion was cited in the second case that followed on this subject matter in which the old common law doctrine of contributory negligence is also established, that is, in the case of *Natal* v. *Bartolomey et al.*, 14 P.R.R. 474, where the present § 1802

of our Civil Code is discussed and it is stated that contributory negligence frees from liability, since it was the immediate cause of the accident. I have already tried to show that the concept of "immediate cause" is contrary to § 1802.

Naturally, the criterion adopted in this concurring opinion presupposes the reversal of a multiplicity of opinions where the erroneous doctrine of contributory negligence has been adopted. But the fact itself of the need of such reversal should not be an unsurmountable wall for the adoption of a new and better doctrine. The judicial investigation of a problem is not bound exclusively by the fact that the problem has been formerly decided. The essential thing is to determine whether that solution is intrinsically correct or erroneous. The rule of *stare decisis* does not justify the perpetuation of an error and should not serve as a substitute for the process of well-founded reasoning. Stability in the rules as an important element in the juridical life of a country should not be overlooked. But that stability should not be synonymous with paralization, and should be reconciled with the progress and development of our legal system. Let us bear in mind that life in Puerto Rico does not end in the year 1954. Our system of law has many centuries to live. Experience in the last fifty years should serve as a guidepost and not as a freezing point for the future. The first fifty years are relevant but not of such exclusive and controlling importance as to influence the hundreds and thousands of years of juridical and social life that remain to our community.

Our jurisprudence as regards this matter opposes the tradition of the civil law and is inconsistent with the intrinsic justice, the juridical logic and the concepts of social welfare. It has subjected our special environment to the artificial burden of a doctrine which lacks rationality and reason for being, with the exception of its original purpose of favoring negligent employers. Even the original authors of the error

are rectifying it before the implacable impact of justice and reality. This concurring opinion does not take the stand of modernizing our legal system through judicial legislation, but of saving the Civil Code from an unjustified interpretation and of impressing on the Code its true, pristine and authentic meaning.

It may not be said that the legislative inaction regarding our former opinions has made valid a wrong interpretation. There is a host of reasons why a legislature fails to act on a specific matter. If the passiveness of the legislature is to have concrete legal consequences, judicial errors would never be set aside. An error of commission, in this sense, does not become correct or valid by virtue of another error of omission. And the legislative assembly could have very well believed that it was unnecessary to amend § 1802 until the judiciary corrected its criterion.

### RULES FOR THE PROPORTIONAL DIVISION OF DAMAGES

Once the comparative negligence or common fault doctrine is clarified by the corresponding proportional division of the damages, the fixing of the indemnity involves essentially questions of fact as to the amount of the total damage sustained and as to the magnitude and degree of each one's share in the common faults. These are questions of fact to be decided by the court of first instance, within the exercise of a sound judgment. Several formulas of general orientation for the trier have been suggested. In 51 Mich. L. Rev. 465, 497, Prosser: *Comparative Negligence*, the following formula is advocated:

(1) After having determined whether both parties have been negligent, the total amount of the damages suffered by the victim, considering the total amount as a hundred per cent, should be determined.

(2) A comparison between both faults must be established, and the percentage of each one's share must be determined. If twenty per cent of the fault rests with the

victim, then the defendant shall answer for eighty per cent of the total damage suffered by the victim, that is, if the damages suffered amount to ten thousand dollars, the defendant shall be obliged to pay eight thousand dollars as indemnity.

Another formula suggested adopts the rule, in the example above set forth, of reducing the twenty per cent from the eighty per cent, the defendant then being liable for sixty per cent of the total damage, that is, for six thousand dollars.

I do not believe that the trier should be restricted or limited by stern mathematical formulas. Tradition and the civil law rule is to the effect that the courts shall mitigate the indemnity according to the circumstances. The fixing of the mutual liabilities should be left to the reasonable discretion and sound judgment of the judge, and he must determine the relative contribution of each party to the causation of the accident, without having to follow specific percentage rules. The solution which I favor, to the effect that the apportionment of damages is a matter which rests in the sound discretion of the court of first instance, without obligation to follow stern formulas of percentage, is the same solution adopted by the commentators of the civil law which I have already cited, and it is the solution that, in my opinion, should become the judicial rule in Puerto Rico. I must make clear that if both faults are of the same degree, they should be compensated without anybody answering for the damages.

### THE CIRCUMSTANCES OF THIS CASE

One of the consequences of the application of the Anglo-American doctrine of contributory negligence has been that of stimulating the courts to escape from the obvious harshness and the clear injustice of that rule by way of the subtle elaboration of exceptions. The attack has been indirect and not frontal. For example, an escape has been found through the ultra refined technicalities of the last clear-chance doctrine. See 51 Mich. L. Rev. 472 *et seq.*, issue copy of

February, 1953; 47 Yale L. J. 704: *Last Clear Chance, A Transitional Doctrine.* Its essential defect, contrary to that of contributory negligence, is that it burdens all the risks and all the liability on the more negligent defendant, even if plaintiff has also been negligent.

In that same category we find the implied exception of children. The rule of children of "similar situation, age or circumstances" has been established to reach the conclusion that a child is not responsible for contributory negligence despite the fact that, as a matter of fact and of physical reality, that child has contributed to cause the accident, up to a certain extent and that, actually, that child has been careless. Such carelessness could have been of little importance and of small magnitude and degree, especially considering his tender age, but as a matter of physical reality it has not ceased to be carelessness merely because it was slight or very slight. The circumstances of his age serve to reduce the degree of fault and of causation within the doctrine of the apportionment of liabilities which we favor, and to mitigate the indemnity, according to § 1056 of our Civil Code, but it should not serve as a basis for a conclusion divorced from reality to the effect that the child has not been negligent at all.

With respect to the specific circumstances of this case, let me copy the first two paragraphs of the findings of facts of the trial court:

"1.—The minor plaintiff, Ellis Hernán Irizarry, fatherless, is under the *patria potestas* of his mother, Providencia Irizarry, in whose company he lives at barrio 'Candelaria' of Lajas, Puerto Rico. At the time of the accident which gave rise to this action, the minor was eight years old and in the second grade.

"2.—On December 27, 1948, at about nine o'clock in the morning, the minor plaintiff was walking along the public road of the afore-cited barrio 'Candelaria' of the Municipality of Lajas in search of some 'grass' for his 'guinea pig.' At the edge of the road he found a cardboard cartridge about 4½

inches long which he took immediately to his house nearby and once in the back yard he removed the cardboard and uncovered a copper-like tube about an inch and a half long and as thick as his small finger with a 'little wire' attached to one of its ends, which he put on a stone and struck with a machete. In so doing the small artifact exploded in the minor's face leaving him unconscious and causing him injuries, which were treated at Lajas' hospital and later at the Municipal Hospital of Mayagüez. The evidence shows that the discovery of the cap by the minor plaintiff and the explosion thereof were continuous acts without the knowledge or interference of the mother or of any other person. The mother became aware of the accident after the explosion. There is nothing in the evidence tending to show that the minor plaintiff knew the dangerous nature of the artifact which he found. According to his own uncontroverted testimony, he had never before seen one like it."

The inescapable reality is that the child was *somewhat* careless in picking up the cardboard cartridge from the ground, in taking it to his house, and there hitting the artifact with a machete. His conduct was *somewhat* imprudent, even for a child eight years old. His carelessness was not serious or substantial. It was rather slight, in view of his age. But that slight character does not imply that his act ceased to be careless. Because it was slight, the child's carelessness should not notably mitigate the indemnity to be paid by the defendant. It would reduce it slightly, in comparison with the little magnitude of the carelessness, but it should always mitigate it to a certain extent.

Mental attitude as to the problem of contributory negligence of minors is important. In the ancient frame of the theory of contributory negligence as totally dismissing defendant from liability, the courts have taken pains in trying to show that there has been no contributory negligence, even by going against the reality of the facts. But from the fresh point of view to the effect that contributory negligence proportionally mitigates, and not wholly eliminates the indemnity, we are free to recognize the realities. The

reality which I see in this case, so obvious that it strikes your eye, is to the effect that the minor was somewhat negligent.

I agree with the indemnity of $15,000 fixed in the opinion of this Court, because I believe that the total amount of damages suffered by plaintiff is greater than $15,000 but that, upon comparing the negligence of both parties, the total amount of damages should be reduced to $15,000.

MR. JUSTICE SIFRE, concurring.

I fully agree with the opinion of the Court. In the case at bar there is no basis to reach the conclusion that the minor plaintiff was negligent. Serious and unfair consequences would ensue if we reversed the doctrine reaffirmed in that opinion as to the standards of behavior to be expected from children of tender age.

As to the negligence that the appellant attributes to the minor, the Court confines itself to deciding that there has been no negligence, which conclusion agrees with that of the trial court, and would bar us from passing on the rule of contributory negligence, even assuming that we might consider it advisable to do so.